**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:22-cr-00230 (RC)** |
| | ) | |
| **ADAM JACKSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ADAM JACKSON'S MOTION TO REVOKE DETENTION ORDER, FOR BAIL MODIFICATION RELEASING HIM PENDING TRIAL, AND FOR A HEARING

Defendant, ADAM JACKSON, by and through undersigned counsel, respectfully moves this Court pursuant to the Bail Reform Act of 1984, 18 U.S.C. 3141 et seq., to review and revoke the Texas magistrate's detention order from a proceeding held on June 9, 2022; and to release Mr. Jackson on personal recognizance. Alternately, if the Court is not amenable to releasing Mr. Jackson on personal recognizance, the Defendant moves this Court to release him into the third-party custody of his wife, and with the conditions contained herein and as shown in the proposed order. The Government opposes release under any conditions. The Defendant requests an oral hearing on this motion and submits the following in support of his request for release from jail:

### I.   INTRODUCTION:

The charges from this case arise from events that took place on January 6, 2021, at the U.S. Capitol. The charges alleged against Mr. Jackson are serious yet under the U.S. Constitution and the Bail Reform Act (BRA or "the Act") of 1984, 18 U.S.C. 3141 et seq., Mr. Jackson is presumed innocent. Adam Jackson adamantly denies guilt for the crimes alleged and seeks his day in court at trial. He denies participating in civil disorder. He denies guilt for allegedly assaulting, resisting, or impeding any law enforcement. He denies guilt for the allegation of bringing or using

1

any dangerous or deadly weapon on the U.S. Capitol grounds. He denies guilt for charges of knowingly entering a restricted area. He denies the charge of allegedly engaging in physical violence at the U.S. Capitol. Mr. Jackson asserts his innocence and at trial, the Government will have to prove otherwise for him to be found guilty. The Government carries the burden of proof. Mr. Jackson asserts that the evidence is weak, and the Government has instead used partial evidence for a narrative that is not representative of what happened on January 6, 2021. Further, bail determination is not the forum for the Government to attempt to make its case on the charges and to poison the potential jury pool. The seriousness of the charges is a factor to consider, along with weight of the evidence, while concurrently presuming that Mr. Jackson is innocent.

The Act is based on the foundation involving a major reason why the United States of America separated itself from England and its tyranny: people should not be held indefinitely in jail without a trial. As such, pretrial release is favored, and pretrial detention is the carefully limited exception. See *United States v. Salerno*, 481 U.S. 739, 755 (1987). Furthermore, the Act is not a replacement for, or a practice run for a trial - it is supposed to ensure that the United States' norm of pretrial release is met. Constitutionally sound application of the Act requires an equal application to all citizens no matter the charge or the calendar day.

The Act is not overly complicated. Unless the Government shows the defendant to be a flight risk by a preponderance of evidence; or that he poses a continuing danger to a particularized person or community by clear and convincing evidence, and that no conditions can mitigate the alleged risks, the Act requires pretrial release. 18 U.S.C. 3141 et seq. A bond hearing is not a substitute for trial and is not supposed to be a pretrial opinion on the alleged charges. Opposition arguments to pretrial release are not a dry run for the Government to try to convict defendants or to label defendants terrorists and insurrectionists to poison the D.C. jury pool before trials begin.

Regarding the application to January 6th Defendants, the D.D.C. has enacted *Chrestman* factors, and in doing so, established its own guidelines outside what is specified in the Act. For instance, actions grounded in political speech like the carrying of a political flag, calling police traitors, political chanting, beliefs regarding election integrity, and hyperbolic social media posts designed to get likes have become outcome determinative factors for purposes of analyzing if someone is a danger to society under the meaning of the Bail Reform Act.  This is wrong. Actions grounded in the Second Amendment, such as wearing protective gear, carrying an object for self-defense, and possessing a first aid kit, for the first time, equivocate to evidence of a specific future threat under the meaning on the Bail Reform Act.  This is wrong, because no single day in American history can change the protections that the United States Constitution affords its citizens, unless that day involves passing legislation that changes the Bail Reform Act.

## II.      BACKGROUND.

Adam Jackson is characterized as a role model family man and father. He runs a successful small business that he built from the ground up and is known for taking care of his employees and helping many in his community. Mr. Jackson grew up under modest financial circumstances where his family could not remotely have been considered wealthy. He has never hidden the fact that he got into trouble twenty-five years ago.  He instead points to fact that since that time he has grown from a troubled youth with a substance abuse problem, into a respected member of his community.

The Government contends that Mr. Jackson is incapable of complying with the instructions of pretrial services and that he is dangerous under the meaning of the Bail Reform Act.  Nothing could be further from the truth. Mr. Jackson is a very decent human being with a loving family.

The character letters accompanying this motion[1] are just a small sampling of the positive opinion about Mr. Jackson held by all who know him. By all accounts, he is a hard-working American who loves his family, God, the local community, and his country.  As such, he is the ideal candidate for pretrial release.

### III.        FACTS.

There are three general groups of people that went to the Capitol on January 6, 2021. Group One is comprised of the people who showed up to exercise their constitutionally protected rights to participate in political protest while never entering the interior of the Capitol or participating in any melee. Group Two is comprised of the people who planned and executed a premeditated attack on the Capitol by committing acts of violence to property and personnel. Group Three is comprised of the people who showed up to participate in political protest yet ended up either: (a) inside the Capitol despite having no premediated intent to do so, and/or (b) used force against police despite having no premediated intent to do so.

Adam Jackson went to Washington D.C. to exercise his First Amendment rights, where he freely admits that, like many other Americans, he believed that the November 2020 Presidential Election was incorrectly decided. It is undisputed that he set out for Washington, D.C. to participate in political protest, in solidarity with other people who share his views, absent knowledge or suspicion of planned violence, or personal intent to be violent in any way.

The Government alleges that Mr. Jackson arrived on the Capitol's Lower Western Terrace somewhere around 5:00 PM, which is approximately four hours after the first police lines were crossed.  Mr. Jackson arrived at the Western Terrace by following the throngs of people he saw there.  He does not cross any barricade nor is there any signage telling him that he is trespassing.

---

[1] See Letters at Exhibit 1

At some point he passes a bottle of liquor to another man and makes the following statement: "Are we going in? Let's go. . . What are we doing standing here, let's go!"  At some point a nearby man handed Mr. Jackson a riot shield. Whether Mr. Jackson was attempting to return the shield and was pushed forward from behind can be argued at trial. He is stuffed at threshold of the tunnel entrance by dozens of officers fully clad riot gear.  No officer is hurt, but Mr. Jackson received a laceration on his head.  He returned to the crowd bleeding, and then departed the grounds.  The Government interprets the video extract as showing Mr. Jackson rushing forward and that the riot shield was a deadly or dangerous weapon. Even if in arguendo we consider that to be what happened, it is not a reason to deny bail. Nothing shows him using the shield as a dangerous weapon and nothing shows him threatening future harm against any law enforcement member - or anyone. The Government version of events does not suffice to deny bail under the Bail Relief Act.

On January 10, 2021, in a private text message, Mr. Jackson stated the following:  "I am gonna do my best to get there" referring to the inauguration which had not yet taken place.  Mr. Jackson never went to the inauguration.  He is alleged to have deleted messages, which he has an absolute and unqualified right to do.

Mr. Jackson lived freely at home in Texas for the next eighteen months after January 6th during which, he lived life as normal.  He worked, attended his son's football games, spent time with his daughters, and lived a life of devotion to his wife.  He was not actively evading law enforcement, nor did he have any reason to believe that his actions were criminal on January 6, 2021.  He never returned to Washington, DC.  He never committed a violent act against any person, never mind a member of the Federal Government.

On June 7, 2022, the Texas branch of Pretrial Services recommended Mr. Jackson's release. At the June 9, 2022, Bond Hearing, the Government stated its conclusion that Mr. Jackson

was a danger and that no release conditions existed that would ensure the safety of the public.  The Government, however, did not articulate any person or entity subject to a continuing danger, which is required by law. (See hearing transcript).[2] And despite the Government having utterly failed to identify a particularized, ongoing danger to any person, any place, or any element of his community—Mr. Jackson was remanded.

To be clear, there is no set of circumstances, under which Adam Jackson is a detainable person under the meaning of the Bail Reform Act.  There is no case law either before or after January 6, 2021, under which he should have ever been detained.  The fact that he has been detained for almost two months is a grave injustice.  Therefore, and for the reasons stated below, undersigned counsel demands his immediate release.

**IV.       PROCEDURAL HISTORY**:

Mr. Jackson was arrested on June 7, 2022 in Texas. (1:22-mj-00127-ZMF at ECF No. 1 for the complaint and ECF No. 6 for the executed warrant). His initial appearance was on June 7, 2022 in the Houston Division of the U.S. District Court for the Southern District of Texas, case 4:22-mj-01282-2. The Pretrial Services Report provided to the Public Defender on June 7, 2022 recommended release.[3] At the first appearance in Texas, Magistrate Edison ordered Mr. Jackson held in confinement prior to a "Preliminary Examination & Detention Hearing" that he set for June 9, 2022 by minute order. On June 9, 2022, Magistrate Edison conducted a joint preliminary hearing for Adam and his brother Brian Jackson.

The government presented its evidence against both defendants as if they had committed a single joint endeavor offense at the bond hearing.  In ruling in favor of detention, the judge

---

[2] Available for purchase through contact provided by the court for its vendor Veritext.

[3] The Pretrial Services Report from Texas dated June 7, 2022 is not contained in the DC docket and resides in the SD TX docket in restricted status only. The Report by the DC Pretrial Services that is contained in the DC docket in restricted status is not a duplicate of the Texas report.

inappropriately conflated the actions of Adam and Brian Jackson, deemed them a threat to society, and remanded both co-defendants in stating: "…there are no conditions that I can impose to alleviate that threat. As a result, I am going to order that they both be remanded. . . ."  Transcript at 97:22-24. In the only separate action for Adam Jackson for the June 9, 2022 combined hearings, the written detention order was published on June 11, 2022. See 4:22-mj-01282 ECF No. 13 and Exhibit 3.

## MEMORANDUM OF LAW

### V.        LEGAL STANDARD

#### A.  The Statutes and Rule That Apply For Pretrial Release Are:

(1) 18 U.S.C. § 3142 (Release or detention of a defendant pending trial);
(2) 18 U.S.C. § 3145 (Review and appeal of a release or detention order);
(3) 18 U.S.C. § 3156 (Definitions); and
(4) Fed. R. Crim. P. 5(d)(3) (detention or release must follow the statute).

#### B.  The Standards Under the Bail Reform Act Are:

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act, 18 U.S.C. § 3141 et seq., thus provides that a defendant must be released pending trial unless it is determined that no condition or combination of conditions exist which will reasonably assure his appearance as required or the safety of the community. 18 U.S.C. § 3142(c). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019)).

If the rebuttable presumption under 18 U.S.C. § 3142(e)(2) does not apply, as in the instant case, then with regard to the risk of flight analysis as a basis for detention, the Government must

prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence during future court proceedings.[4]  When the basis for pretrial detention is the defendant's danger to the community, the Government is required to demonstrate the appropriateness of detention pursuant to subsection (e) by clear and convincing evidence. U.S.C. § 3142(f). Short of that, a judicial officer is generally required to release the defendant "subject to the least restrictive condition or combination of conditions" to effect these goals. *Id.* "Under the Act, a decision to detain must be supported by written findings of fact and a statement of reasons, and is immediately reviewable." *Salerno*, 481 U.S. 739.

**Assessing Dangerousness**

The factors that must be considered in assessing the defendant's future dangerousness are laid out in § 3142(g) of the Bail Reform Act as: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.[5]

In *United States v. Chrestman*, Chief Judge Howell outlined six factors to be considered in assessing the nature and circumstances of January 6, 2021 related offenses, including whether a defendant: (1) has been charged with misdemeanors or felonies; (2) engaged in prior planning before arriving at the Capitol, for example by obtaining weapons or tactical gear; (3) carried or used a dangerous weapon, be it a firearm, large pipe, wooden club, or other offensive use

---

[4] See *United States v. Xulam*, 318 U.S. App. D.C. 1, 84 F.3d 441, 442 (1996) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)) (explaining that a finding must be based on clear and convincing evidence that the defendant poses a danger to the community or a preponderance of the evidence to support the conclusion that presents a risk of flight.

[5] See *United States v. Xulam*, 318 U.S. App. D.C. 1, 84 F.3d 441, 442 (1996) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)) (explaining that a finding must be based on clear and convincing evidence

instrument; (4) coordinated with participants before, during, or after the riot; (5) assumed either a formal or de facto leadership role by encouraging other rioters misconduct; the nature of the defendant's words and movements during the riot.[6]

Regarding whether a defendant presents an a clearly identifiable and articulable future threat to the community the district court must consider in light of all record evidence, whether a defendant charged with felonies involving the possession of dangerous weapons at the U.S. Capitol on January 6, 2021, presents a clearly identifiable and articulable future threat to the community. "Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *United States v. Munchel,* 991 F.3d 1273, 1280 (DC Cir. 2021).

Additionally, in making an individualized assessment of dangerousness, the court must consider whether the defendant has prior felony convictions, ties to extremist organizations, and whether his post-January6[th] related behavior presents an articulable future threat to the community, in light of evidence that a defendant did not commit illegal acts of violence or did not participate in planning / coordinating a January 6th related attack on the U.S. Capitol. *United States v. Tanios*, 856 Fed. Appx. 325 (D.C. Cir. 2021).

**Assessing Flight Risk**

Regarding flight risk, the D.C. Circuit "ruled that such a finding need only be supported by a preponderance of the evidence." *U.S. v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) ((quoting *United States v. Vortis,* 785 F.2d 327, 329 (D.C. Cir. 1986)). To show preponderance of the evidence, the magistrate's memorandum must address significant counterbalancing factors

---

[6] *United States v. Chrestman, No. 21-mj-218, 2021 (D.D.C. 2021).*

presented by the defense including witnesses or testimony representations such as "family ties, employment, . . . length of residence in the community, community ties, . . . and record concerning appearance at court proceedings . . . that are relevant to the assessment of the risk of flight." *Simpkins*, 826 F.2d at 97. The memorandum cannot just regurgitate the Government statements as meeting the preponderance of evidence while ignoring the defense counters.

## VI.        ARGUMENT

Release is warranted in this case, because (1) The Government cannot prove by clear and convincing evidence that Mr. Jackson is a danger to any person or the community, and (2) the Government cannot prove by a preponderance of the evidence that Mr. Jackson is a flight risk, and (3) Assuming arguendo that Government somehow can meet its burden, the Government cannot prove that there is no condition, or combination of conditions that will reasonably assure Mr. Jackson's appearance in court and the safety of any person or the community. Because of this, Mr. Jackson should be released subject only to the least restrictive condition or combination of conditions necessary to ensure his return to court and the safety of the community.

**A.  Mr. Jackson is not a Danger to any Person or the Community as Shown by the Four Assessment Factors listed in § 3142(g):**

1.  The crimes alleged are serious and allege violence. However, Mr. Jackson asserts that the nature and circumstances of the allegations as presented by the Government differ vastly from the truth he experienced on the ground. For instance, the allegation that Mr. Jackson is the person that threw a traffic cone in the direction of the police does not appear to be supported by the Government's evidence.   The allegation that Mr. Jackson both threw the cone and intended to use as a weapon is in dispute as well.  Furthermore, asserting that a plastic traffic cone qualifies as a

dangerous weapon is simply not a meritorious claim, but rather a stretch on the part of the Government to make Mr. Jackson's actions look far worse than they were.

The use of the riot shield as a dangerous weapon by Mr. Jackson will be argued at trial. A riot shield is by its nature a defensive item. Mr. Jackson made no use of any riot shield as an offensive weapon. He did not swing any riot shield a menacing fashion. He did not spear anyone or club anyone with it. The idea, therefore, that his mere possession of the shield or use of the shield to protect himself, even while attempting to cross a police line, somehow converts the shield to dangerous weapon is simply not supported by the facts of this case, or relevant case law.

2. Mr. Jackson contends that the weight of the evidence is weak and incorporates the reasons stated above to support his claim. Mr. Jackson highlights the fact that the Government included in the Statement of Facts cited *supra* pictures showing a man holding the riot shield and then that man pushing Mr. Jackson forward. The claim, therefore, that Mr. Jackson rushed police is weak at best.

3.A. Mr. Jackson's history and characteristics are described in the more than fifty letters at Exhibit 1. Mr. Jackson was 42 years old when arrested on June 7, 2022. He has deep ties to his family and community where he has lived for over 26 years. He operates a successful small business that he founded. The heartfelt letters from family, friends, and community members provide strong character references as to his being an outstanding parent and someone who regularly helps others; always treating people kindly. He has a kind heart and assists people in need. His family members state in their letters that he is needed at home to support his family financially and emotionally. Those who have known him for many years attest that he turned his life around and is a decent, moral, and peaceful person. The writers convey that his release poses no danger to the members of his community, or the public, in any way.

In 1997 he was accused of firing a weapon. The affidavits at Exhibit 2 describe the events, that included a warning shot in self-defense and protection of another. For unknown reasons a prosecutor pursued the matter months afterward. Adam was not convicted. He entered into Deferred Adjudication with release to community supervision for ten years. He completed that supervision, which is a clear indication of an ability to comply with court instructions.

Mr. Jackson had a drug problem as a young adult.  The problem developed after he was prescribed pain killers. He entered a treatment program. He completed the program. He has been clean since 2005. Mr. Jackson's support letters show that he is a role model and father figure to many young people. His business provides services across the community. His employees and business partner depend on him. Upon release he will remain employed and be able to keep his business running. Mr. Jackson has never failed to make a court appearance or to respond to law enforcement. There was a false allegation made against him in 2009. Mr. Jackson disputed this allegation with the police and was never charged.  Yet this appears on his record and has been wrongfully counted against him.

To summarize: Mr. Jackson changed the direction of his life around 2002, completely sobered up by 2007, and has been on the straight and narrow ever since. The fact that the Government needs to reach some two decades into his past to create a criminal history does not change the fact that the 1997-2002 era of Mr, Jackson's life has long since passed and is not a representative sample of the good man that he is today.

3.B.  Mr. Jackson was not on probation at the time of arrest.

4.  Mr. Jackson poses no danger to anyone if he is released. Mr. Jackson poses no threat to public safety.  There is no threat whatsoever, and subsequently there is no continued, identified, or articulable threat. His First Amendment speech about government policies, the direction of the

country, and any critique of government are protected. He has made no attempt to instigate anyone or cause any discord. He will comply with all release conditions. The legal standards established by *Salerno*, *Munchel*, *Nwokoro*, and others were ignored during the Texas proceeding held on June 9, 2022, and in the order filed after the bond hearing.

It is, therefore, abundantly apparent that in denying bail the Magistrate Judge failed to factor the following points into his analysis: (1) The presumption of liberty favoring release to which Adam Jackson is entitled; (2) The presumption of innocence to which Adam Jackson is entitled for the alleged crimes; (3) the Pretrial Services' recommendation that Adam Jackson should have been released on June 7, 2022; (4) The nature and circumstances of the offense charged, as well as its singular occurrence that is not something to be expected anywhere again or regularly; (5) The weak weight of the evidence; (6) Adam Jackson's history and  characteristics over the last 15 - 20 years as separated from Brian Jackson, and non-criminal free speech that threatened nothing; (7) The lack of any risk of danger to the local community; (8) The complete absence of an identified, continuing, and articulable threat; (9) The condition or combination of conditions requested that could assure Adam's return to court and the safety of the community, and to place in writing why any condition requested would fail to do so; (10) the fact that the BRA requires a hearing for a single defendant that would not be highly prejudicial to the defendant as happened in this case; and (11) the very real fact that he was free for eighteen months following January 6th and did not threaten or harm any member of his community, was completely ignored, despite being positive proof that Mr. Jackson poses no specific articulatable future threat to the community if released.

**B.**  **Mr. Jackson is not a Flight Risk and the Government Cannot Show he is by any**
**Preponderance of Evidence.**

At the bond hearing the Government conceded that Mr. Jackson is not a flight risk.  Pretrial Services rated the risk as low. As the letters at Exhibit 1 show, he is deeply rooted in his local community. His life is in his local community. He has no passport and no overseas connections. He never prepared or planned to flee between January 6, 2021 and June 7, 2022. Mr. and Mrs. Jackson purchased a new family home in their local community in August of 2021. His parents and family live in the community. He is a fixture in the community for his business as well as his help at youth sporting events. He would not deliberately miss his son's graduation from high school in 2023. Mr. Jackson has no history of failing to appear in court. He is a loving husband to his wife and a loving father to his six children. Mr. Jackson has every reason to stay home and no reason to flee. He seeks to be acquitted at trial.

The Government has not, cannot, and will not prove that Adam Jackson is a flight risk by a preponderance of the evidence.

**C.**  **The Nature and Circumstances of the Charged Offense Using the *Chrestman* Factors**
**Clearly Favor Release**.

Adam Jackson is not a danger based upon the six advisory "guideposts" articulated in *United States v. Chrestman*, No. 21-mj-218 (ZMF), 2021 WL 765662 (D.D.C. Feb 26, 2021) for assessing the comparative culpability of a given defendant in relation to others on January 6, 2021. The guideposts are as follows: (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before,

during, or after the riot; (5) whether the defendant played a leadership role in the events of January 6, 2021; and (6) the defendant's words and movements during the riot"—e.g., whether the defendant "remained only on the grounds surrounding the Capitol" or "stormed" into the Capitol interior, or whether the defendant "injured, or attempted to injure, or threatened to injure others." *Id*. at 7-8.

**(1) Whether the Defendant has Been Charged with Felony or Misdemeanor Offenses.**

Mr. Jackson has been charged with felonies. He has never been convicted of any felonies and this is the first time that he has ever been charged with a federal felony. He is without question presumed innocent of all charges even though *Chrestman* rewards the Government by its mere act of charging a felony where it can create any narrative to obtain an indictment in secret. The charges alone weigh in the Government's favor but nothing in the Bail Reform Act "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. 3142(j).

The Government uses weak and even irrelevant evidence to support the charges and denial of bail. Standing alone, the charges in the indictment weigh in the government's favor. But at this time, what the US Attorney presented to sway the grand jury to indict apparently required little to nothing given the complaint's affidavit. The words used inside the grand jury room remain secret. An indictment with piled on charges alone does not change the presumption of innocence. It does not alter weak Government's evidence. The Government cannot show that Mr. Jackson knew he was not allowed to be on the Capitol grounds.

**(2) The Extent of the Defendant's Prior Planning**. Mr. Jackson merely planned Constitutionally legal travel. Mr. Jackson's only plan for January 6 was to peacefully protest. He had no knowledge, nor did he make any plans, to do anything nefarious at the U.S. Capitol. He brought no weapons or tactical gear. He did not bring any firearm, knife, chemical spray, taser,

stun gun, sharp object, hand cuffs, rope, or zip-ties into Washington, D.C. This factor weighs in favor of Mr. Jackson.

**(3) Whether the Defendant Used or Carried a Dangerous Weapon**.  Mr. Jackson brought no dangerous weapon and will defend against the allegation that he used a riot shield or a traffic cone as a dangerous weapon. Adam Jackson did not swing, poke, hit, smash, or hook any person or piece of property with a riot shield or traffic cone. Adam did not brandish anything in a threatening manner. This factor is a tie that currently goes to Mr. Jackson's favor under the rule of lenity because the video and pictures are open to interpretation prior to analysis at trial. Mr. Jackson declares his innocence.

**(4) Evidence of Coordination with Other Protestors Before, During, or After the Riot.** Adam Jackson and his brother travelled to D.C. together.  Nothing about Adam's plans was nefarious or illegal. He is not a member of any extremist group. Mr. Jackson did not coordinate with any stranger before, during, or after January 6th. He did not use a tactical radio or walkie-talkie. He did nothing to breach the Capitol grounds or building. He did not enter the building. Mr. Jackson attended a peaceful rally in Washington, D.C.  He entered the Capitol building grounds after any semblance of signs and barriers closing the area had been removed. He planned nothing against anyone. He entered the grounds behind others, where no signs, barriers, or policeman indicated he should not enter. This *Chrestman* factor weighs in Mr. Jackson's favor.

**(5) Whether the Defendant Played a Leadership Role in the Events of January 6, 2021**. Mr. Jackson led nothing and knew of nothing being led by anyone at the Capitol. All that he is aware that was led was a brutal use of excessive police force that was a major contributing factor in causing a riot when people were peacefully protesting. He is not a member of any group that supports violence against the government. He is never seen using any electronic earpiece, walkie-

talkie, etc. He did not know of anything to "lead."  There was no braggadocio by him before or during the horrible turn where a peaceful protest became a declared riot on January 6, 2021. Mr. Jackson made a joke after January 6 when a person asked if he brought a riot shield home. He did not steal a riot shield and just said jokingly it would have cost too much to ship. He could have instead stated that he gave the shield back to or placed it down for the police. This factor weighs for Mr. Jackson.

**(6) The Defendant's Words and Movements During the Riot**. Mr. Jackson did not encourage anyone to assault police.  He did not destroy property or vandalize the Capitol building. Mr. Jackson did not take a riot shield from any officer. Mr. Jackson did not enter the Capitol building.  The Government's own pictures in its statement of facts dispute the claim that Mr. Jackson rushed anyone. One picture shows a person behind Mr. Jackson pushing him in the back toward the police. The true facts will be argued at trial. This factor weighs for Mr. Jackson.

## VII.     ANALYSIS

**A. Mr. Jackson is eligible for Pretrial detention based on the charges but should be released** because he is not a flight risk and poses no continuing, articulable danger to anyone, anywhere.

**B. The Magistrate's Order for Detention Should be Immediately Revoked** because it fails to meet legal standards under the BRA. There was no individual hearing. Mr. Jackson faced harmful prejudice. The magistrate did not separate facts related to each defendant as shown by his conclusion that treated the co-defendant brothers like conjoined twins.  Further, the legal standard for an order denying bail requires that it must be written, contain specifics, and explain why no conditions can allow bail. The order is deficient. While a transcript can be used, nothing in the

transcript for this hearing cures the defects of the order. There was no identification of a continuing specific danger. There was no mention of any proposed release condition and why it was unsatisfactory alone or in combination with other conditions. The decision denied bail based on judge-made law outside of the BRA legal standards by adding that Mr. Jackson will not abide by release conditions.

### C.  There are no Legitimate Concerns to Deny Release

Mr. Jackson's character reference exhibits to this motion show the true man rather than the inaccurate presentation made on June 9, 2022. The Government wrongly claimed on June 9, 2022 that Mr. Jackson has a longstanding violent history. The period of 1997 - 1998 does not define him.  What that period does show is that he even at his worst he was never convicted of a felony. It also shows that he can comply with court instructions, as evidenced by the fact that he abided by the conditions of his deferred adjudication agreement for ten years.

Today Mr. Jackson is a father of six, happily married, and gainfully employed.  He is also a role model in his community where his roots run deep.  He requires no conditions for release but will accept and abide by conditions. He prays this Court will consider his family, employees, longstanding and continuing support, respect for law enforcement, and his history of law-abiding conduct.

Many January 6 defendants with comparable (or worse) offenses alleged and charged as was Mr. Jackson, and even those with recent, significant criminal histories, have been released on bail. "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976). This requirement has traditionally been referred to as 'procedural' due process." *Salerno*, 481 U.S. at 746.

Mr. Jackson submits, the fact that he fact that he was free for eighteen months following January 6th and did not threaten or harm any member of his community is incontrovertible proof that his release poses no threat to the community.

**D.  Mr. Jackson is Presumed Innocent and is an Ideal Candidate for Release**. Under § 3142(c) the Court has a variety of conditions, including any novel ones it may create, to allow Mr. Jackson to attend to  support his family with his love and continued employment, to not be forced into business bankruptcy for a business that often provides low-cost support in the community, and to be engaged in his defense preparation from home in Texas. Denial of bail means the Court must find that restrictions on travel; mandatory calls to a Pretrial Services officer; a bond with consent to relinquish money or assets if conditions are violated; and any other restriction imaginable will not ensure the Mr. Jackson's presence for proceedings or the safety of others. *U.S. v. Simpkins*, 826 F.2d 94 (D.C. Cir. 1987) referencing Section 3142(f).

In the humanity of granting bail, the Speedy Trial Act is essentially suspended due to COVID. Under these conditions, jailed defendants face indefinite pretrial detention that was not contemplated in the Bail Reform Act or by the U.S. Supreme Court in *Salerno* where it found the Act contained the safeguard of the Speedy Trial Act. Mr. Jackson is not dangerous and poses no continuing, articulable threat to any person or member of the community.  He and his family guarantee his presence for proceedings. He is fleeing nowhere. He will remain close to his loving family. Mr. Jackson will remain employed. He will work with his legal team to prepare his defense from Texas.

**E.  Mr. Jackson Should be Released on his Own Recognizance but the Following Conditions Can Alleviate Any Concerns**:

The standard conditions used in the Court include stay out of D.C. except for court requirements; comply with courtesy [SD TX] Pretrial Services monitoring; no travel outside the Southern District of Texas without prior notification of Pretrial Services; no travel outside the continental U.S. without approval of this Court; not possess a firearm; maintain or continue employment, do not use alcohol excessively; and do not use any illegal substances with the added condition of an unsecured signature appearance bond for $25,000. to be collected if conditions are violated.

## VIII.          CONCLUSION

WHEREFORE, for the foregoing reasons, and any others which may appear in our reply brief or at the hearing requested for this matter, and any others this Court deems just and proper, Adam Jackson through counsel, respectfully requests a hearing and that he be released on personal recognizance. If those proposed release conditions are not acceptable, Mr. Jackson requests as an alternative, that he be released in Third Party Custody to his wife, given the standard D.D.C. release conditions, with an added unsecured appearance bond that will be payable if he fails to abide by the release conditions and appear as required.

Dated: Washington, DC
       August 2, 2022

Respectfully submitted,

*/s/ Joseph D. McBride, Esq.*

Joseph D. McBride, Esq.
Bar ID:  NY0403
THE MCBRIDE LAW FIRM, PLLC
99 Park Avenue, 6th Floor
New York, NY 10016
p: (917) 757-9537
e: jmcbride@mcbridelawnyc.com


Respectfully submitted,

*/s/ Carolyn A. Stewart*

Carolyn A. Stewart, D.D.C. Bar No. FL0098
Defense Attorney
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
Tel: (813) 659-5178
Email: Carolstewart_esq@protonmail.com


## CERTIFICATE OF SERVICE

I hereby certify on the 2nd day of August 2022, a copy of the foregoing was served upon all
parties as forwarded through the Electronic Case Filing (ECF) System.

*/s/ Joseph D. McBride, Esq.*

Joseph D. McBride, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 1:22-CR-00230 (RC)** |
| | ) | |
| **ADAM JACKSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>PROPOSED ORDER 1</u>**

This matter having come before the Court upon the Defense's Motion to Revoke the

Magistrate's order and set Conditions of Release, the motion is hereby GRANTED, and it is

hereby ORDERED:

The U.S. Marshalls are to release Mr. Adam Jackson immediately and return him home

to Texas expeditiously and without delay, AND

Mr. Jackson is released on his own recognizance and is required to make all required

court appearances.

**SO ORDERED.**
this     day of     , 2022.

HONORABLE Rudolph Contreras
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.                     ) | **Case No. 1:22-CR-00230 (RC)** |
| ) | |
| **ADAM JACKSON,**          ) | |
| ) | |
| **Defendant.**       ) | |

**PROPOSED ORDER 2**

This matter having come before the Court upon the Defense's Motion to Revoke the

Magistrate's order and set Conditions of Release, the motion is hereby GRANTED, and it is

hereby ORDERED:

The U.S. Marshalls are to release Mr. Adam Jackson immediately and return him home

to Texas expeditiously and without delay, AND

Mr. Jackson is released under standard D.D.C. release conditions, with courtesy

supervisory monitoring by the S.D. Texas Pretrial Services which Defendant will comply with;

and Mr. Jackson is required to sign an unsecured appearance bond which is payable if he does

not comply with requirements for appearances and release conditions.

**SO ORDERED.**
this    day of    , 2022.

HONORABLE Rudolph Contreras
United States District Judge