**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CR-00230 (RC) |
| | ) | |
| ADAM JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REVOKE ORDER OF DETENTION OF U.S. MAGISTRATE JUDGE AND TO MODIFY BOND CONDITIONS**

Defendant, ADAM JACKSON, by and through undersigned counsel, respectfully moves this Court to reject the Government's response (See ECF No. 23) to his motion (See ECF No. 21) to revoke the magistrate's order and set conditions for release on bail; and pursuant to the Bail Reform Act of 1984, 18 U.S.C. 3141 et seq for this Court to set conditions and order his immediate release from the Northern Neck Regional Jail. The Government has failed to proffer a single relevant fact supporting the conclusion that Adam Jackson, a man who while living freely from January 7, 2021 – June 7, 2022, broke no laws and committed no crimes is somehow now a danger to the community. The Government provided no clear and convincing evidence indicating that Mr. Jackson presents a specific, continuing, concrete danger to any person or the community. Neither has the government made any argument as to why there is no condition or combination of conditions under which Mr. Jackson can be released pending trial. Mr. Adam Jackson states the following in support:

I.    **PRELIMINARY STATEMENT**.

The Government's opposition response avoids the relevant and mandatory legal issues required under the Bail Reform Act ("the Act") to deny release and instead relies on a dubious reconstruction of Mr. Jackson's youth to make him look like a career criminal, which he certainly

is not.  The Government, in its lust to jail anyone who went to the Capitol on January 6, 2021, has turned a blind eye to the fact that Mr. Jackson is a husband, father, grandfather, business owner, employer, mentor, coach, churchgoer, and law-abiding citizen.  The Government cites the fact that Mr. Jackson completed ten years of court-supervised release as a young man including a short time around 2006-2007 that he struggled with drug addiction as a justification for Mr. Jackson's detention, while completely ignoring the fact that said completion of court-supervised release is irrefutable evidence that Mr. Jackson did comply with court instructions at his worst, never mind his fifteen consecutive years of law-abiding life after voluntarily entering a drug rehabilitation program.  The Government has disgracefully conjured up uncorroborated "facts" about an incident that took place in 1997, some twenty-five years ago, because there is NOTHING about Mr. Jackson's life indicating that he is a flight risk or that he presents a danger to any person or the community. In the following argument, Mr. Jackson incorporates his motion at ECF No. 21.

## II.    <u>ARGUMENT</u>

### A.  The Magistrate's Order Should Be Revoked

The magistrate relied on a history misrepresented by the Government to deny bail and made no finding of any specific, continuing threat to anyone and the community. He made no mention of any proposed condition of release and why it was inadequate. The Government wrote, "Notably, at the time Magistrate Judge Edison ordered Jackson detained, he had not been charged with a crime of violence, yet the judge still found that Jackson was a danger to the community." ECF No. 23 at 4. The Government misrepresents and would have this Court believe that the magistrate held a hearing and denied bail without any awareness of the violence charges in the complaint, arrest warrant, and Pretrial Services Report. The Government would have this Court believe that the magistrate after hearing only the Government's embellished history for Mr.

Jackson rendered his decision that he did not believe Mr. Jackson would comply with any release conditions. Then according to the Government, this Court could find there was never cause under § 3142(f)(1)(A) for the magistrate to grant the Government a hearing to deny bail; and Mr. Jackson can be released immediately under conditions as this Court sees fit.

The truth is that the magistrate was presented with the Government's charges that alleged a crime of violence. See 4:22-mj-01282, June 9, 2022 Transcript at 3:23-25. The subsequent indictment contained the same charges from the arrest warrant, complaint, and statement of facts that were presented to the magistrate. The illegitimacy of the proceeding arose when neither the government nor the magistrate made any separation between the two co-defendants' charges and histories. The hearing did not comply with the Bail Reform Act because it was simultaneously for Mr. Jackson and his co-defendant, where criminal histories and January 6 charges were intermingled, and the magistrate's ruling was that *both defendants* should be detained because *they* were a danger, and he did not believe *they* would abide by any release conditions. See Govt' Response ECF No. 23 at 3. This violated the Act and caselaw where detention determinations must be made individually and must be based on the evidence for the particular defendant. See *United States v. Khater*, No. 21-3033, at *1 (D.C. Cir. July 26, 2021) ((quoting *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir. 1990)).  The magistrate also did not state his decision in writing as required according to the Act and caselaw that requires him to record the identifiable, continuing, concrete, and specific threat of danger posed by clear and convincing evidence. (See 18 U.S.C.S. § 3142(i) and (f). ((*See also* Salerno, 481 U.S. 739, 751 (1987)).

**B.  The Government's Response Argues Facts Unsupported by the Available Evidence**

In its response, the Government incorrectly presents its allegations regarding events on January 6 as facts. (ECF No. 23 at 1-4). The statements about a "mob" at 5:00 p.m. on January

6 when Mr. Jackson was present and is alleged to have committed his offenses are not supported by fact or video. There was a crowd that was very much reduced from hours earlier.  The assertion that "He egged others on to assault law enforcement officers" by saying "Are we going in? Let's go . . . What are we doing standing here, let's go!" *id*. is not a fact. The Government's conversion of any spoken words about "going in" equating to urging an assault on law enforcement is not true in the English language. The Government also omits that when Mr. Jackson was drinking liquor from a bottle there is no indication anyone paid attention to anything said from his liquid courage. More importantly, there has been no crowd line of sight analysis done to ascertain what, from his position on the steps, Mr. Jackson saw about the police. An omitted fact by the Government in its claim that police were just guarding the building is that they began spraying mace and gas from inside the tunnel build-out. Another fact, as discovery audio and many videos will show at trial, is that the police around the time of 5:00 p.m., were emerging in force from the "west tunnel" with the mission to use all force necessary to push everyone off the west terrace. The Government cannot assert its allegation as fact that Mr. Jackson 'rushed' the police line. Whether he was pushed, stumbled, or walked on his own is a matter for analysis and trial. It is not a given fact. The Government cannot assert as fact that Mr. Jackson threw a small orange traffic cone in the tunnel, which the Government wrongly labels a 'large projectile.' The Government's own FBI witness in Texas stated that Mr. Jackson's actions were not directly visible on video, and it was *an estimate* based on video from the rear that showed where he was, combined with other clips from the front showing an orange cone as having been thrown from that area. It is fact that the numerous video clips from throughout the day show only small pliable cones that cannot truthfully be called "large projectiles" when used against police in armor with shields.

**C.  The Government's Attempt to Fabricate a Criminal History Where None Exists Should be Disregarded in its Entirety**

The Government's deliberate distortion of Mr. Jackson's criminal history is a deliberate attempt to assassinate the character of a law-abiding man who has resided in his local community of Katy, Texas, for the past twenty-five years.  Mr. Jackson is a husband, father, grandfather, business owner, employer, mentor, coach, churchgoer, and law-abiding citizen.  The Government cites the fact that Mr. Jackson completed ten years of court-supervised release for deferred adjudication as a young man, including a short time around 2006-2007 that he struggled with drug addiction as a justification for Mr. Jackson's detention, while completely ignoring the fact that said completion of court-supervised release is irrefutable evidence that Mr. Jackson did comply with court instructions at his worst, never mind his fifteen consecutive years of law-abiding life after voluntarily entering a drug rehabilitation program.  The Government has disgracefully conjured up uncorroborated "facts" about an incident that took place in 1997, some twenty-five years ago, because there is NOTHING about Mr. Jackson's life indicating that he is a flight risk or that he presents a danger to any person or the community. While the Federal Rules of Evidence may not be enforced at bond hearings, the Government does not have a license to distort, undermine, or conjure up facts for which it has no credible or trustworthy evidence to take away Mr. Jackson's liberty at any price.

**D.  Mr. Jackson's release is Warranted under *Chrestman* and Relevant Case Law**

Adam Jackson's only plan regarding January 6th was to go to Washington, DC, and exercise his First Amendment rights to participate in political protest against the United States Government. There is no evidence that Mr. Jackson made any preparation for violence or any illegal activity. He did not wear tactical gear, a gas mask, steel-toed shoes, or other clothing that the *Chrestman*

factors consider problematic.   He is not a member of any group deemed problematic regarding January 6th.   And his post-January 6th conduct, which is to say eighteen consecutive months of law-abiding life, is the absolute strongest indicator that he should be released.

Mr. Jackson is charged with felonies that derive from allegedly throwing a small, pliable traffic cone at armored police behind full-body riot shields, and for contacting police while holding a riot shield. Mr. Jackson disputes the assault and dangerous weapon use charge.   There is no case law supporting the conclusion that a pliable traffic cone is a dangerous weapon—because a pliable traffic cone is not a dangerous weapon.  As pointed out in *United States v. Klein*, a plastic riot shield is also not a dangerous weapon.   "A plastic riot shield is not an 'inherently dangerous' weapon, and therefore the question…" here as in *Klein*  is whether Mr. Jackson "…used it in a way 'that is likely to endanger life or inflict great bodily harm." *United States v. Klein*, 533 F. Supp. 3d 1, 12 n.6 (D.D.C. 2021). In simplest terms, "[A] 'deadly or dangerous weapon' means 'any object which, *as used or attempted to be used*, may endanger the life of or inflict great bodily harm on a person." U.S. v. Bullock, 970 F.3d at 215.  (Emphasis added). "A defendant who acts 'forcibly' using a deadly or dangerous weapon under § 111(b) must have used force by making physical contact with the federal [officer], or at least threatened the [officer], with an object that, as used, is capable of causing great bodily harm." *United States v. Klein*, Crim. No. 21-236 (JDB), at *11 (D.D.C. Apr. 12, 2021) (quoting *Taylor*, 848 F.3d at 494; *Gray*, 980 F.3d at 266-67).

In an attempt to drum up a nefarious context, the Government also claims that Mr. Jackson "bent his head down low for maximum impact and succeeded in knocking at least one officer down." *Id*. at 8. This claim is highly speculative and unsupported by the Government's own evidence, which shows a man defensively holding a riot shield.  The more likely truth is that Mr. Jackson drunkenly attempted to cross a police line on January 6th.  His attempt was unsuccessful.

6

He exited the tunnel area with a bloody injury, and then went home.  Nothing regarding his actions on January 6th supports the conclusion that he qualifies for detention under *Chrestman, Munchel,* or the Bail Reform Act.

### E.  The Government's Response About Mr. Jackson's History and Characteristics Should be Rejected

The Government has reached back twenty-five years to the time of Mr. Jackson's youth to dirty up what has largely been a law-abiding life.  The Government would have this Honorable Court believe that misdemeanor charges from Mr. Jackson's juvenile years are indicia that he is an inherently violent person incapable of complying with release conditions—nothing could be further from the truth.  As evidence of a violent criminal past, the Government presented dismissed charges from 1997, 2002, and 2009, as if mere charges prove guilt. The Government defies our Constitutional standard where a person is innocent unless proven guilty. The existence of a dismissed charge shows nothing but innocence, period.

The past decade and a half of Mr. Jackson's life and his many attached character letters dispel the Government's false claims that he has a long, violent history.  The truth is that Mr. Jackson has no prior felony conviction or any continuing, long violent history. The Government's response shows desperation in its misrepresentation to create bad character fiction about Mr. Jackson. For example, in ECF No. 23 at 13, the Government wrote "In 2002 and 2004, he was arrested for 'terroristic threats' . . ." Here, the Government does not tell this Court that the charges were dismissed and that they have nothing to do with terrorism. In one document which was available to the Government, the dismissal lists specifically that it was because of lack of evidence and upon the request of the complainant. The Government claims three violent assaults when he pled to two misdemeanors (one as a juvenile) where he received 30 and 41 days respectively in

jail for scuffles where today in almost every major city in the U.S. an arrest would not even be made. There were no guns, knives or weapons involved, and there were no hospitalizations.

The Government's inaccuracy continued. It wrote that "at age 18, in 1997, he was arrested and sentenced to ten years 'deferred probation' for aggravated assault with a deadly weapon." There is no conviction for deferred adjudication and there is no sentence - it is a penalty. Words matter. Similarly, the Government presents hearsay within hearsay with no determination of source credibility to add an alleged statement never sworn to regarding this incident. Further, for the 2007 self-defense warning shot that Mr. Jackson fired to stop a deadly assault, the Government uses what it alleges is a police report, even though the Houston Police Department told the Defense that it never handled the 2007 case and has zero files.

The Government is grabbing at straws when it must use hearsay within hearsay to make allegations. Mr. Jackson's two affidavits trump the Government's unidentified double hearsay. ECF No. 23 at 13 confirms that history and character favor release because the Government's response is so weak if not desperate. The Government states that Mr. Jackson was guilty of violent behavior while it is again relying on non-credible double hearsay (a drunken man's word in an alleged police report for the false 2009 assault claim where neither he nor the alleged victim, who just as likely fell down steps while drunk, swore under oath to anything).

The Government falsely asserts "although dated, Jackson has demonstrated a repeated capacity for violent behavior." ECF No. 23 at 13. No such thing is true no matter how much spin the Government attempts. The Government's response should be rejected as irredeemable because not only does the Government fail to articulate a present, continuing, concrete threat to anyone and the community under a clear and convincing evidence standard, the Government deliberately misrepresented Mr. Jackson's past.

**F.  The Government Made Zero Mention of Why No Single or Any Combined Release Conditions Can Mitigate the Unarticulated Dangerousness**

The Government does not make a single mention of any of the thirteen release conditions, including the Court's ability to design any condition, or those proposed by Mr. Jackson. The Government responded as if the § 3142(e)(2) presumption applies when it does not apply here. The Government's disingenuous approach in its response is to have the Court falsely believe that Mr. Jackson is a dangerous person who should have been in jail for the past twenty-five years. Because of the Government's failure to show why no proposed release conditions will protect against a future threat (with nothing identified with specificity for any person and the community let alone with clear and convincing evidence), the Government's response should be rejected.

**G.  The Court's Application of the Bail Reform Act in Similar Cases Shows that Mr. Jackson Should be Released**

In many other cases before this Court where defendants' activities on January 6th were alleged to be as or much more violent than as alleged here, the government did not ask for detention, or the court otherwise granted release. In *USA v. Robert Sanford*, 21 CR 86 (PLF), where the defendant is alleged to have hurled a fire extinguisher at officers and hit someone in the head, he was given a bond. In *USA v. Chad Jones,* 21 CR 213(RJL), the defendant was filmed using a flagpole to break down the door leading to the Speaker's lobby, yet the government did not ask for detention. In *USA v. Gossjankowski* , 21 CR 123 (PLF), the defendant was observed actively using a taser on a police officer, is charged with using a deadly weapon, and was given a bond. And in *USA v. Leffingwell,* 21 CR 5 (ABJ), the defendant was seen pushing past a wall of officers and punching an officer repeatedly to break past the officers and he was released. In *USA v. Klein*, 533 F. Supp. 3d 1 (D.D.C. 2021), the defendant was charged with multiple felonies like Mr. Jackson; and encouraged the crowd and had extended engagement with police.

### H.  The Court Should Reject the Obstruction Claim Because it is Disingenuous

The Government's claim for obstruction of justice as a reason for detention holds no water. § 3142 (f)(2)(B) relates to "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." The Government made no argument about anything Adam Jackson could now or in the future do that would be an obstruction of justice in his case. Mr. Jackson voluntarily told the FBI that he had deleted text messages, which he has had no duty to preserve.  He then gave government agents the password to his phone. The idea that these actions somehow arise to obstruction is unconscionable.

## III.   <u>CONCLUSION</u>

Because the government failed to show by clear and convincing evidence any articulated, concrete, identifiable, continuing dangerous threat to any person and the community posed by Mr. Adam Jackson, and did not address a single proposed release condition or why nothing can mitigate the completely unarticulated danger, where Mr. Adam Jackson's history definitely shows he has lived peacefully in his community for at least twenty-five years, and that he demonstrated when under ten years of deferred adjudication that he respects the law and can obey supervised release, the Court should immediately order release under any conditions it deems the least restrictive and reasonable. A combination of conditions proposed in the instant motion for this reply would assure the Court of the safety of the community and of Mr. Jackson's presence at trial.

Dated: August 21, 2022                    Respectfully Submitted,

                                          /s/ Joseph D. McBride, Esq.

_____

                                          Joseph D. McBride, Esq.
                                          Bar ID: NY0403
                                          THE MCBRIDE LAW FIRM, PLLC
                                          Attorneys for the Defendant
                                          99 Park Avenue, 25th Floor
                                          New York, NY 10016
                                          Phone: (917) 757-9537
                                          Email: jmcbride@mcbridelawnyc.com

                                          /s/ Carolyn Stewart
                                          Carolyn Stewart, Esq. D.D.C. Bar No. FL0098
                                          Defense Attorney
                                          Stewart Country Law PA
                                          1204 Swilley Rd.
                                          Plant City, FL 33567
                                          Tel: (813) 659-5178
                                          Email: Carolstewart_esq@protonmail.com


### CERTIFICATE OF SERVICE

I hereby certify on the 21st day of August, 2022, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

                                          /s/ Carolyn Stewart, Esq.
                                              Defense Attorney